# AT LAW AND IN CHANCERY

DETERMINED IN THE

## SUPREME COURT

OF THE

# STATE OF COLORADO.

---

## WINNE et al. *v.* COLORADO SPRINGS CO.

1. Facts, and not mere conclusions of law, must be stated in pleadings. Thus in an action against a surety upon a promissory note, where forbearance to the maker is sought to be interposed, it is not sufficient to aver merely that "*for good and sufficient consideration*" further time was given. The consideration must be stated.

2. The discharge of a surety upon a promissory note, on the ground of forbearance may, in an action against the surety, be given in evidence under the general issue.

3. A plea averring the solvency of the maker of a note at maturity, and an *offer*, merely, by him to pay, is bad in substance as a plea of tender. Actual tender of the amount due and a refusal to accept must be averred, to constitute a sufficient plea.

4. To exonerate a surety from liability upon the ground of forbearance, the extension must be for a time certain and upon a consideration binding upon the creditor. (*Sears* v. *Van Dusen*, 25 Mich., disapproved.)

5. If judgment is obtained for an amount exceeding the *ad damnum* in the declaration, the plaintiff in the judgment may remit the excess in this court. But in such case the appellant will be allowed costs in this court.

*Appeal from District Court of El Paso County.*

On the 11th day of March, 1874, Myron F. Thomas made and delivered to the Colorado Springs Company (a corporation) his promissory note for $1,200, which was indorsed by Winne & Cooper, and Matt France. Suit was commenced upon the note after maturity, in the district court of El Paso county, by the payee against all the parties above named, and service had upon each. The declaration averred in one count that "before the delivery of the note to the plaintiff, and in order to give the said Thomas credit with the plaintiff, and at the request and for the accommodation of the said Thomas, the said defendants, Peter Winne and Job A. Cooper (in the style of Winne & Cooper), and Matt France, then and there indorsed the said last-mentioned note, and plaintiff further avers that in consideration of the said indorsement of said last-mentioned note or instrument of writing by the said Winne and said Cooper and said France, and on account of the credit so given to Thomas by such indorsement, the said plaintiff then and there accepted said last-mentioned note or instrument of writing and gave the said Thomas credit for the sum of money therein mentioned, according to the tenor thereof. And the defendants then and there delivered the said last-mentioned note or instrument of writing to the plaintiff, and thereby promised to pay to the order of the plaintiff the sum of money therein specified, according to the tenor thereof," etc.

Judgment was taken against Thomas by default. The pleas interposed by his co-defendants were *non-assumpsit nul tiel corporation,* and two special pleas. The plaintiff demurred to the special pleas, which are sufficiently stated in the opinion. The demurrers were sustained and judgment entered thereon as follows :

"This day this cause came on to be heard upon the plaintiff's demurrer to the third and fourth pleas of the defendants, Peter Winne, Job A. Cooper and Matt. France, by them plead herein, the plaintiff appearing by his attorney,

J. M. Davidson, and the said last-named defendants by their attorney, A. C. Phelps, and after argument of counsel, the court being fully advised in the premises, it is considered by the court that the matters and things in the said third and fourth pleas alleged are not, nor is any of them, sufficient in law to bar or preclude the said plaintiff of his action, and that said plaintiff have and recover of and from the said defendants, Winne, Cooper and France, his costs on this issue accruing."

The cause was tried on the remaining issues at the October term, 1874, before a jury, resulting in a verdict for the plaintiff in $1,632, upon which judgment was subsequently rendered. Winne, Cooper and France appealed to this court. The errors assigned were : In sustaining the demurrers to the special pleas ; that the district court erred in rendering final judgment in the cause without first entering judgment against the appellants upon the sustaining of the demurrer to their said third and fourth pleas, and without issue joined on said pleas ; and that the district court erred in rendering final judgment in said cause without having first rendered the proper judgment against said defendants (appellants) on sustaining the said demurrers to their said special pleas.

It may be proper to state that no evidence appears to have been offered by the defendants in the court below tending to show their discharge as sureties.

Messrs. BENEDICT & PHELPS, for appellants.

Messrs. DAVIDSON & HARRISON, for appellee.

THATCHER, C. J.   This was an action brought against Myron F. Thomas and the appellants upon a promissory note. Judgment by default was taken against Thomas. The other defendants, the appellants herein, plead the general issue, *nut tiel* corporation, and two special pleas, setting up in each a defense as sureties. To each of the special pleas a demurrer was allowed. Judgment was taken against all the defendants at a subsequent term.

The first error assigned is, that "the district court erred in sustaining the demurrer of the plaintiff in said court to the third plea of the appellants." This is a plea that the appellee, by an agreement with Thomas, and without the consent of the sureties (the appellants), gave him further time for the payment of the note "for a good and valuable consideration," and that thereby the sureties became discharged.

The demurrer to this plea is general and special. The special ground of demurrer is, that the plea contains no statement of the consideration. The plea is bad. The consideration is the very gist of the agreement to extend the time, and should be truly and fully pleaded. The mere averment that the time was extended "for a good and valuable consideration" is not sufficient. It is but the statement of the existence of a consideration, without the facts out of which it arose. It is simply a conclusion of law which, as a rule, ought not to be pleaded. It may be laid down as a general proposition that whenever a parol agreement is declared upon, or pleaded in defense of an action (unless the agreement be a written instrument, purporting to be for value received, *Prindle* v. *Caruthers*, 15 N. Y. 425), the declaration or plea should disclose the facts from which it must appear that there was a legal consideration to support the agreement relied on. If such an averment be wanting, the court cannot on demurrer determine the legal sufficiency of the consideration. On another ground, it is necessary that the consideration should be explicitly stated, viz.: that the adverse party may not be surprised at the trial by the introduction of the testimony to prove a consideration not stated in the pleading. *Marshall* v. *Aiken*, 25 Vt. 332 ; 1 Chitty's Pl. (16th Am. ed.) 300, note *k ; Harris* v. *Rayner*, 8 Pick. 542 ; *Moore* v. *Ross*, 7 N. H. 528; *Bailey* v. *Bussing*, 29 Conn. 5.

It was not necessary to set up this defense by a special plea, as even if well pleaded, the same defense is available under the general issue. *Warner* v. *Crane*, 20 Ill. 148.

The next error assigned is, to the allowance of the demurrer to the defendants' fourth plea, which sets up substantially that the principal debtor being solvent and prepared to pay at the maturity of the note "offered to pay the said plaintiff the amount due thereon," which offer the plaintiff refused, and that thereafter Thomas became and remained insolvent, whereby the sureties became discharged. If this is intended to be a plea of tender, it is substantially defective. Not a mere offer to pay, but an actual tender must be averred, unless the production of the money was waived, in which case the waiver must be pleaded, and it must be alleged that the defendant was about to tender, etc. 2 Chitty's Pl. (16th Am. ed.) 471, note a.

If the plea is intended to set up an offer to pay by the principal debtor, he being solvent, the question is, does such a plea present a valid defense to an action against the sureties? When a tender is actually made of the amount due, satisfaction of the debt is within the reach of the creditor. Good faith to the sureties requires that he should accept the money. Sureties are liable to the creditor; but their obligation is accessory to that of the principal. When the principal makes payment, or actually tenders payment of the sum due to the creditor, he does all that the sureties are legally and equitably required by their contract to see that their principal shall do. If the creditor refuses to accept the money, when actully tendered and clearly within his grasp, he is guilty of a palpable omission of duty to the sureties, and they are thereby released from all liability. This doctrine rests upon an intelligible ground. *Joslyn* v. *Eastman*, 46 Vt. 263. But an actual tender of money by the principal differs very widely from a mere verbal offer to pay, even though he be in a perfectly solvent condition when he makes the offer. The contract of the sureties is not that the principal will offer to pay the debt at maturity, but that he will in fact pay it, or what, so far as the obligation of the sureties is concerned, is equivalent thereto, he will make an actual tender thereof. To declare that a mere

offer to pay, which chronic borrowers are in the constant habit of making, without a dollar in sight, operates to discharge the sureties, would be to announce a dangerous principle; to relax, if not to nullify the binding character of the sureties' contract, in a case where their rights and remedies remain unaffected by any act of their principal or creditor. The ground upon which sureties are discharged, when an actual tender is made and rejected, is, that at the time of the creditor's refusal to accept the money, the complete satisfaction of the debt is not contingently or conditionally, but absolutely under his control and in his power. In such case the conduct of the creditor in omitting to perform the duty which the law clearly enjoins, to wit: to accept the tender, is a fraud upon the sureties and the reason for their exoneration is stronger than in a case where a security is abandoned or surrendered to the principal, or an execution actually levied has been withdrawn, and the authorities are agreed that in the latter class of cases the sureties are discharged at least *pro tanto* by the act of the creditor. *Sneed* v. *White,* 3 J. J. Marsh. 525; *Jones* v. *Bullock,* 3 Bibb, 467; *Curran* v. *Colbert,* 3 Ga. 239; DeColyar on Guaranties, etc. 438 (Morgan's Am. ed.); Daniels on Negotiable Instruments, 289; 2 Am. L. Cas. 395 (5th ed.). But the principle upon which these decisions rest, viz.: that the means of satisfying the debt is actually under the control of the creditor, cannot be evoked in aid of the doctrine, that a mere unaccepted offer to pay, unaccompanied by a production of the money exonerates the sureties. *Sears* v. *Van Dusen,* 25 Mich. 351, is, so far as our research has extended, the only case in conflict with the doctrine here laid down. The supreme court of Michigan does not in this case rest its decision upon any substantial foundation. Says the court: " The finding of facts does not show that the defendant in error (surety) consented to be *bound* by the extension." This is true. But neither does the finding of the facts show that the creditor was bound by any valid agreement to extend the time. After a verbal offer to pay has once been made, consent to forbear or mere indul-

gence determinable at the will of the creditor, binds no one. To exonerate a surety from liability, the extension must be for a time certain and based upon a sufficient consideration. *Gardner* v. *Watson*, 13 Ill. 347; *Woolford* v. *Dow*, 34 id. 427; *Miller* v. *Stem*, 2 Penn. St. 286; *M'Lemore* v. *Powell*, 12 Wheat. 554; *Coman* v. *The State*, 4 Blackf. 242.

In the absence of a valid agreement to extend the time, the rights and remedies of the creditor against the principal and sureties as well as the rights and remedies of the sureties against the principal are unchanged. The creditor's hands are not tied up for a single moment; he may sue at any time. The sureties are entirely free to pay the debt and sue the principal for the amount. The relations of the parties are in no respect altered. When sureties seek to be discharged on the ground of extension of time, the controlling question is, was the extension of such a character as to bind the creditor and thereby preclude him from pursuing his remedy against the principal? If yea, even if the suspension of the remedy be but for a day, the sureties are exonerated; otherwise, they are held. In the case before us, the creditor was not bound to delay suit an instant by reason of the forbearance he had extended. However high respect we may entertain for the opinion of the supreme court of Michigan, we cannot bow to its authority when so clearly in conflict with sound reasoning, and the great current of decisions.

The two remaining assignments of error, both going to the sufficiency of the entry of the judgment upon allowing the demurrer to the third and fourth pleas, are not well taken. The judgment is not, as contended, interlocutory. It clearly shows a final disposition of the third and fourth pleas and is in substantial conformity with approved precedents. Robinson's Forms, 110.

The judgment of the court below is in excess of the *ad damnum* laid in the declaration, by $132. The appellee has remitted the excess, as under the authorities it may do. *Consolidated Gregory Co.* v. *Raber*, 1 Col. 513; *Linder* v. *Monroe's Executors*, 33 Ill. 389.

VOL. III.—21

For the residue, the judgment of the lower court will be affirmed. The appellants will recover costs in this court.

*Affirmed.*

———————

On petition for rehearing, the following opinion was rendered by

WELLS, J. We are unable to find in the fourth plea, what counsel supposed to be contained there. As we think the plea cannot, by any reasonable interpretation, be said to impart more than this, to wit: that the principal debtor neither produced the sum due, nor had it in hand, nor indeed elsewhere, but was possessed of a large estate and ample means and might presently have procured it.

If the allegation that the debtor was possessed of much property and ample means is not to be taken as qualifying the allegation.that he was there prepared to pay, and as showing wherein the preparation consisted, the words are meaningless.

It is said, however, that the creditor's refusal dispenses with the production of the money, and the actual offer of it. No case is cited to show that the creditor's refusal will dispense with having the money present, nor can it be maintained upon authority, that the offer to produce is dispensed with by the creditor's refusal to accept.

Now, as between debtor and creditor, the rejection of an offer to pay, under the circumstances stated in the plea, would in no respect have changed the position of the parties. The rejection of such a proposal neither impairs the right of action nor diminishes the damages. It is not effectual even to stay accruing interest nor relieve the debtor of costs in a subsequent action. The reason is, that the offer amounts to a mere proposition to perform what the debtor has already more solemnly undertaken. It is, therefore, mere empty clamor, which the creditor is under no requirement to even notice. Whether he assent, or refuse, or maintain silence, is all one. Now if this be its effect as be-

tween parties, how can the circumstance that a third person stands as surety to the debtor, affect the duty of the creditor? Can he, in either case, accept what is not tendered nor even presented? He can neither accept nor reject.

The most positive refusal of a mere theoretical offer in words, no money being present or shown, is a nullity, whosever rights are concerned.

The case of *Ramsey* v. *The Westmoreland Bank*, 2 Pen. & W. 203, the broadest of the cases cited by counsel, is questioned by high authority (2 Am. L. Cas. 397), but even this case does not countenance such a defense; the money was there in court subject to the order of the creditor; in the words of the court, the creditors "had the means of payment in their power."

We see no reason to modify our former conclusions.

*Rehearing denied.*